STATE OF MAINE                              SUPERIOR COURT
KENNEBEC, SS.                               CRIMINAL ACTION
                                            Docket No.   CR-13-247
                                            DHM -KEN- 1/23/2014

STATE OF MAINE

v.                                          **VERDICT ON**
                                            **BENCH TRIAL**
MARK MURPHY,

            Defendant


Defendant was indicted on April 17, 2013, on Count I: Elevated Aggravated

Assault (Class A); Count II: Elevated Aggravated Assault (Class A); and Count III:

Aggravated Assault (Class B).   The indictment arises out of an incident of March 16,

2013 at the Riverview Psychiatric Center in Augusta.   Count I alleges that on that date

and place the Defendant "did intentionally or knowingly cause serious bodily injury to

Jamie Hill-Spotswood with the use of a dangerous weapon, a pen."   In Count II, it

alleges that on the date and place in question, Defendant "did engage in conduct that

manifested a depraved indifference to the value of human life and that in fact caused

serious bodily injury to Jamie Hill-Spotswood with the use of a dangerous weapon, a

pen."   Finally, Count III alleges that Defendant on that date and place "did

intentionally, knowingly, or recklessly cause serious bodily injury to Jamie

Hill-Spotswood."

A waiver of jury trial was filed September 4, 2013  and  trial was held before the

court.

On March 16, 2013, at the Riverview Psychiatric Center, Jamie Hill-Spotswood, a mental health worker, was in the process of executing a check of the unit's bathroom. She saw the Defendant enter the bathroom just before she got to the area of the bathroom. As she was passing by, the Defendant came out of the bathroom and addressed Ms. Hill-Spotswood saying, "I'm sorry Jamie," and then immediately began a vicious attack on Ms. Hill-Spotswood by stabbing her repeatedly on the top of her head with a ball-point pen. Attempting to protect herself, Ms. Hill-Spotswood placed her hands on her head during the attack and dropped to the ground screaming for another mental health worker. A second mental health worker, Ms. Vigue, approached the Defendant and he initiated an assault on Ms. Vigue as well. As she was unable to control the Defendant, a Riverview client came out of his room near the attack and tackled the Defendant to the ground where he restrained the Defendant until additional staff was able to respond. Ms. Hill-Spotswood had a significant amount of blood dripping down her head from lacerations and she felt a great deal of pain in her right hand where she received defensive wounds. The injury to Ms. Hill-Spotswood's hand was serious enough to require subsequent surgery.

Upon being restrained, the Defendant was handcuffed and escorted to a seclusion room. Two days later, Defendant explained his rage at staff at Riverview because they had denied him his usual privileges, including a trip to Kittery to visit with his family and denial of a walk on the grounds. Defendant did not offer an explanation of why he assaulted the staff member. His discussion and demeanor were consistent with a person who was very angry because he did not get his needs met.

2

Defendant had a history of contention with various staff members. Some months prior the Defendant had discussed with staff his thoughts about having to "hurt someone" in order to leave the hospital. Defendant has a diagnosis including Schizoaffective Disorder, mood and psychotic symptoms following closed head injury, PTSD, alcohol and cocaine abuse, Personality Disorder, and Bipolar Disorder with Psychosis.

It is the State's responsibility to prove beyond a reasonable doubt that the Defendant acted intentionally, knowingly, or recklessly. If that is proven, the Defendant, under his plea, must then prove by a preponderance of the evidence that his conduct is excused because, as a result of a mental defect, he lacked substantial capacity to appreciate the wrongfulness of his criminal conduct. 17-A M.R.S.A. § 39; *Taylor v. Commission*, 481 A.2d 139 (Me. 1984).

For the few days following the assault, the Defendant expressed his denial of any memory of the event although he admitted that at some point he was aware that he had the pen in his hand. In June, three months later, during the course of forensic psychiatric and psychological examinations from the Maine State Forensic Service, he first explained that while in his room that day he became preoccupied with the idea that he was not married. He wanted a wife and he wanted to be married to Ms. Hill-Spotswood. He knew that it was impossible inasmuch as she was married to CJ Spotswood and therefore she could not marry anyone else. He stated that he understood her vows included, "to death do you part." He told the psychiatrist that he decided to resolve this by killing her and then bringing her back to life and marrying

3

her. He then explained that he came out of his room planning to go the nursing station to talk to Ms. Hill-Spotswood, but she was doing bathroom checks. According to his version, he went into the bathroom but the toilet was plugged with feces and paper and he exited. Taking the view of the toilet as a sign, he decided "I had to do it." He then assaulted Ms. Hill-Spotswood with the intent of killing her to fulfill his delusion that she would marry him after he brought her back to life. He admitted saying, "I am sorry," to Ms. Hill-Spotswood prior to the attack, but denied that he committed an act sufficient to kill her.

Evidence of circumstances leading up to the incident in question is instructive. There was an incident on March 15 in which the Defendant was informed that his usual weekend trip to visit his parents was cancelled due to the Team's concern for his safety. Hearing that his pass would be delayed by one week he became obviously very frustrated and angry and felt that the postponement was arbitrary and punitive. On March 16, the Defendant requested to review his medical records and formally requested to be allowed to go on an unsupervised walk and to be allowed to Skype his parents at 10:00. A registered nurse instructed that she wanted Mr. Murphy to remain in the hospital due to the Team's concerns and he seemed to agree.

The Forensic Psychologist testified that the Defendant's statement just prior to the assault, "I'm sorry," suggests that he was aware at the time that assaulting her was wrong. Obviously, too, his story of desire to kill the victim so that she would no longer be married and available to him, expressed an intent to kill. The psychologist was skeptical of the Defendant's self-report because he found the motivation for the assault

and the reason for the apology to be extraordinarily illogical even for someone who is actively delusional. Further, the psychologist noted that the Defendant made no statements either before or after the assault that were consistent with his current explanation. The psychologist noted the documentation in the Riverview psychiatric set of medical records indicating that Defendant was very angry when his privileges were restricted the day before the incident. Further, on the morning of the incident, he was denied his request to go for a walk and appeared very angry, causing some fear on the part of the nurse. The records further indicate that his state of anger persisted, at least by anger at the Riverview staff. The psychologist further noted that the Defendant has held the belief in the past that if he kills someone at Riverview, he would be able to leave, even though there is no indication he had that belief at the time of this assault.

The psychologist found no evidence that the Defendant's mental illness interfered with his ability to act in a planned, goal-directed way at the time of the allegations. His behavior both prior to and after the incident reflect that he was engaging in reality-based interactions with staff members. Finally, the psychologist concludes that all of the circumstances surrounding this particular incident indicate that it is "behavior that is a departure from his base-line thinking and behavior of recent years."

On the other hand, the forensic psychiatrist found an abnormal condition of mind, including that the Defendant was suffering from a mental illness that impaired his ability to perform in a culpable state of mind. He indicated he was not able to act rationally, and while he acted intentionally, it was based on psychotic distortions and

misperceptions. The psychiatrist noted that the Defendant's symptoms may emerge unpredictably, but he is not clear as to why the Defendant appeared to be getting worse in the days before he assaulted Ms. Hill-Spotswood, and he opined that he did not believe his actions could be understood on the basis that he was angry and acting out of anger. In his testimony, the psychiatrist admitted that the defendant's explanation for his reasons for the attack are what he described as a sense of grandiosity and were not consistent with previous historical delusions.

Both the psychiatrist and the psychologist conclude that in addition to the Defendant's diagnosis of paranoia he also has a personality disorder. Such a disorder, as anti-social personality, is a personality trait that puts a person in conflict with society.

The elements of the offenses as charged have clearly been proven beyond a reasonable doubt. At issue is whether the Defendant has presented sufficient evidence to establish by a preponderance that the Defendant "lacked substantial capacity to appreciate the wrongfulness of the criminal conduct." 17-A M.R.S.A. § 39. This lack of substantial capacity must arise as a result of mental disease or defect, which means, "only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality." It is beyond dispute that on the day of the attack the Defendant was very angry. This anger was directed to the staff of Riverview who had denied him privileges he had enjoyed in the past because of an agitated state which had been developing in the period prior to March 16. However, it is clear that both immediately before and after the attack the Defendant remained angry

6

but otherwise behaved in a rational manner. As described, he had been "ruminating" in his room.

On a previous occasion, the Defendant had expressed an idea of attacking the husband of the victim with a pen. Stabbing the victim, as in this case, repeatedly with a pen and causing very serious bodily injury was consistent with his rage. Furthermore, had he not been restrained by another client, he would have been successful in attacking another staff member who had come to the rescue of Ms. Hill-Spotswood. Having two days in seclusion to consider the circumstances, the Defendant professed to have no memory of the event other than awareness of a pen in hand. However, some months later, in interviews with the forensic psychological experts, Defendant self-reported this story of a delusion that causing the death of a woman out of affection and the irrational theory that death would release her from her marriage, she would become available to Mr. Murphy. There is no evidence that this explanation by the Defendant of his actions was ever made to any staff persons at Riverview, and did not become self-reported until several months later. Even the psychiatrist opining of the lack of criminal responsibility admitted that the Defendant had sufficient opportunity to create the story and such a story was inconsistent with any part of the Defendant's previous psychiatric or medical history. In these circumstances, the court does not find the Defendant's explanation credible but simply an attempt to create some psychotic explanation for a fit of anger. This explanation is the foundation for the finding by the psychiatrist of an abnormal condition of mind and is rejected.

The court notes the logical relationship between statements expressing a conclusion that killing someone would allow him to leave the psychiatric center and his anger at the staff for the denial of privileges. His repeated statements of things being unfair and the staff playing a game with him regarding his privileges all seem consistent. The court concludes his anger was consistent with his personality disorder and PTSD. It is also satisfied that the Defendant presented insufficient evidence that it is more likely than not that at the time of the attack the Defendant was suffering from a severely abnormal mental condition that grossly and demonstrably impaired his perception or understanding of reality. Accordingly, Defendant is found guilty of Counts I, II, and III of the indictment.

DATED: January 18, 2014

Donald H. Marden
Superior Court Justice

STATE OF MAINE
    vs
MARK MURPHY
250 ARSENAL ST
AUGUSTA ME 04330

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2013-00247

**DOCKET RECORD**

DOB: 11/12/1965
Attorney: CHARLES FERRIS
         FERRIS GURNEY AND CROOK PC
         11 PARK STREET
         WATERVILLE ME 04901
         APPOINTED 05/08/2013

State's Attorney: MAEGHAN MALONEY

Filing Document: CRIMINAL COMPLAINT
Filing Date: 03/21/2013

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1    ELEVATED AGGRAVATED ASSAULT                    03/16/2013 AUGUSTA
Seq 10077 17-A  208-B(1)(A)        Class A
   ELLIOT              / CSE

2    ELEVATED AGGRAVATED ASSAULT                    03/16/2013 AUGUSTA
Seq 10078 17-A  208-B(1)(B)        Class A
   ELLIOT              / CSE

3    AGGRAVATED ASSAULT                             03/16/2013 AUGUSTA
Seq 629   17-A  208(1)(A)          Class B
   ELLIOT              / CSE

## Docket Events:

03/21/2013 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 03/21/2013

03/21/2013 Charge(s): 1,2,3
         WARRANT -  ON AFFIDAVIT REQUESTED ON 03/21/2013

03/21/2013 Charge(s): 1,2,3
         WARRANT -  ON AFFIDAVIT ORDERED ON 03/21/2013
         BETH  DOBSON , JUDGE
03/21/2013 Charge(s): 1,2,3
         WARRANT -  ON AFFIDAVIT ISSUED ON 03/21/2013

03/21/2013 Charge(s): 1,2,3
         WARRANT -  ON AFFIDAVIT MODIFY ACKNOWLEDGED ON 03/21/2013 at 10:55 a.m.

03/21/2013 Charge(s): 1,2,3
         WARRANT -  ON AFFIDAVIT EXECUTED BY AGENCY ON 03/21/2013 at 12:39 p.m.

03/22/2013 Charge(s): 1,2,3
         HEARING -  INITIAL APPEARANCE SCHEDULE OTHER COURT ON 03/22/2013 at 01:00 p.m.

         AUGDC
03/27/2013 Charge(s): 1,2,3
         HEARING -  INITIAL APPEARANCE HELD ON 03/22/2013

BETH  DOBSON , JUDGE
03/27/2013 Charge(s): 1,2,3
        HEARING -  STATUS CONFERENCE SCHEDULED FOR 05/23/2013 at 10:00 a.m.

03/27/2013 Charge(s): 1,2,3
        PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 03/22/2013

03/27/2013 BAIL BOND - $25,000.00 CASH BAIL BOND SET BY COURT ON 03/22/2013
        BETH  DOBSON , JUDGE
        NO USE OR POSSESSION OF DANGEROUS WEAPONS AND RANDOM SEARCH AND TEST FOR THE SAME NO
        CONTACT WITH JAMIE HILL SPOTSWOOD 1-21-86 OR HER FAMILY AND NOT TO BE AT HER RESIDENCE
        PLACE OF EMPLOYMENT OR PLACE OF EDUCATION.
04/25/2013 Charge(s): 1,2,3
        HEARING -  STATUS CONFERENCE NOT HELD ON 04/25/2013

04/25/2013 Charge(s): 1,2,3
        SUPPLEMENTAL FILING -  INDICTMENT FILED ON 04/19/2013

04/25/2013 Charge(s): 1,2,3
        HEARING -  ARRAIGNMENT SCHEDULED FOR 06/11/2013 at 08:30 a.m.

04/25/2013 Charge(s): 1,2,3
        HEARING -  ARRAIGNMENT NOTICE SENT ON 05/08/2013

05/08/2013 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 05/07/2013

05/08/2013 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 05/08/2013
        M MICHAELA MURPHY , JUSTICE
        COPY TO PARTIES/COUNSEL
05/08/2013 Party(s):  MARK MURPHY
        ATTORNEY -  APPOINTED ORDERED ON 05/08/2013

        Attorney:  CHARLES FERRIS
06/13/2013 PSYCHIATRIC EXAM -  STAGE ONE EXAM ORDERED ON 06/13/2013
        NANCY  MILLS , JUSTICE
        COPY MAILED TO ATTY FERRIS, DA OFFICE AND FAXED TO STATE FORENSIC.
06/13/2013 Charge(s): 1,2,3
        HEARING -  ARRAIGNMENT CONTINUED ON 06/11/2013
        NANCY  MILLS , JUSTICE
06/13/2013 Charge(s): 1,2,3
        HEARING -  ARRAIGNMENT SCHEDULED FOR 08/13/2013 at 10:00 a.m.

06/13/2013 Charge(s): 1,2,3
        HEARING -  ARRAIGNMENT NOTICE SENT ON 06/13/2013

06/13/2013 WRIT -  HABEAS CORPUS TO PROSECUTE ISSUED ON 06/13/2013

        CERTIFIED COPY TO SHERIFF DEPT.
06/24/2013 LETTER -  FROM NON-PARTY FILED ON 06/24/2013

        NOTICE FOR EXAMINATION SCHEDULED ON 6/28/13 AT 8:30 AM.
06/24/2013 LETTER -  FROM NON-PARTY FILED ON 06/24/2013

NOTICE FOR EXAMINATION ON 6/29/13 AT 1:00 PM FILED.
07/24/2013 OTHER FILING - OTHER DOCUMENT FILED ON 07/24/2013

60 DAY INPATIENT - CR COMPETENCE, INSANITY, ABNORMAL CONDITION OF THE MIND (CRIMINAL
RESPONSIBILITY)                                                    COPIES SENT TO PARTIES
07/26/2013 OTHER FILING - OTHER DOCUMENT FILED ON 07/26/2013

INPATIENT - 60 DAY COMP
07/26/2013 OTHER FILING - OTHER DOCUMENT FILED ON 07/26/2013

IN-PATIENT - 60 DAY
08/13/2013 Charge(s): 1,2,3
        HEARING - ARRAIGNMENT HELD ON 08/13/2013
        M MICHAELA MURPHY , JUSTICE
        Defendant Present in Court

        READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
        DEFENDANT. 21 DAYS TO FILE MOTIONS
08/13/2013 Charge(s): 1,2,3
        PLEA - NOT CRIMINALLY RESPONSIBLE ENTERED BY DEFENDANT ON 08/13/2013

08/13/2013 Charge(s): 1,2,3
        TRIAL - DOCKET CALL SCHEDULED FOR 09/04/2013 at 10:30 a.m.

08/13/2013 Charge(s): 1,2,3
        TRIAL - DOCKET CALL NOTICE SENT ON 08/13/2013

08/14/2013 WRIT - HABEAS CORPUS TO PROSECUTE ISSUED ON 08/14/2013

        CERTIFIED COPY TO SHERIFF DEPT.
09/05/2013 Charge(s): 1,2,3
        TRIAL - DOCKET CALL HELD ON 09/04/2013
        DONALD H MARDEN , JUSTICE
        Defendant Present in Court
09/05/2013 Charge(s): 1,2,3
        REQUEST - WAIVER OF JURY TRIAL FILED ON 09/04/2013

09/05/2013 Charge(s): 1,2,3
        REQUEST - WAIVER OF JURY TRIAL APPROVED ON 09/04/2013

09/05/2013 Charge(s): 1,2,3
        TRIAL - BENCH SCHEDULED FOR 10/01/2013 at 08:30 a.m.

        NOTICE TO PARTIES/COUNSEL
09/06/2013 Charge(s): 1,2,3
        TRIAL - BENCH NOTICE SENT ON 09/06/2013

10/02/2013 Charge(s): 1,2,3
        TRIAL - BENCH HELD ON 10/01/2013
        DONALD H MARDEN , JUSTICE
        Attorney: CHARLES FERRIS
        DA: FERNAND LAROCHELLE
10/10/2013 NOTE - OTHER CASE NOTE ENTERED ON 10/10/2013

EXHIBITS ARE PUT ON SHELF IN VAULT BY DOCKET BOOKS
10/18/2013 OTHER FILING -  OTHER DOCUMENT FILED ON 10/18/2013

         Attorney:  CHARLES FERRIS
         CLOSING ARGUMENT
10/18/2013 OTHER FILING -  OTHER DOCUMENT FILED ON 10/18/2013

         DA:  FERNAND LAROCHELLE
         STATE'S ARGUMENT
10/22/2013 CASE STATUS -  DECISION UNDER ADVISEMENT ON 10/01/2013
         DONALD H MARDEN , JUSTICE
01/23/2014 Charge(s): 1,2,3
         FINDING -  GUILTY ENTERED BY COURT ON 01/23/2014
         DONALD H MARDEN , JUSTICE
01/23/2014 Charge(s): 1,2,3
         FINDING -  GUILTY CONT FOR SENTENCING ON 01/23/2014

01/23/2014 ORDER -  COURT ORDER ENTERED ON 01/23/2014
         DONALD H MARDEN , JUSTICE
         VERDICT ON BENCH TRIAL: DEFENDANT IS FOUND GUILTY OF COUNTS 1, 2 AND 3 OF THE INDICTMENT.

A TRUE COPY
ATTEST:  _____
                   Clerk